UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

JAMES GARDNER,

                Plaintiff,

      v.

TETRAPHASE PHARMACEUTICALS,
INC., L. PATRICK GAGE, GAREN
BOHLIN, STEVEN BOYD, JEFFREY A.
CHODAKEWITZ, JOHN G. FREUND,
GERRI HENWOOD, GUY MACDONALD,
KEITH MAHER, and NANCY J.
WYSENSKI,

                Defendants.

------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff James Gardner ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      This action is brought by Plaintiff against Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company") and the members of Tetraphase's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Tetraphase will be acquired by AcelRx

Pharmaceuticals, Inc. ("AcelRx") through AcelRx's indirect wholly-owned subsidiary Consolidation Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On March 16, 2020, Tetraphase issued a press release announcing it had entered into an Agreement and Plan of Merger dated March 15, 2020 (the "Merger Agreement") pursuant to which AcelRx will acquire Tetraphase.  Under the terms of the Merger Agreement each Tetraphase stockholder will receive, for each share of Tetraphase stock they own, (i) 0.6303 shares of AcelRx common stock (the "Exchange Ratio")[1], and (ii) one contingent value right per share (a "CVR") representing the right to receive up to $12.5 million in the aggregate, subject to the achievement of certain net sales milestones[2] (the "Merger Consideration").

3.      On April 24, 2020, defendants filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Tetraphase stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company and AcelRx management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, Janney Montgomery Scott LLC ("Janney"); (ii) the background of the Proposed Transaction; and (iii) Tetraphase's financial

---

[1] If the Company's closing net cash ("Closing Net Cash") is less than $5.0 million, the Exchange Ratio shall be adjusted to the ratio determined as follows: (a) (i) $20.0 million, minus (ii) the dollar amount by which the Closing Net Cash is less than $5.0 million, minus (iii) $10,265,292, divided by (b) (i) 10,800,166 shares of Tetraphase common stock divided by (ii) $1.43.

[2] The CVRs represent the right to receive payments of up to $12.5 million in the aggregate, payable in cash of AcelRx stock at AcelRx's election, if the following milestones are achieved: (i) $2.5 million upon the achievement of annual net sales of XERAVA in the U.S. of at least $20.0 million during the calendar year ending on December 31, 2021; (ii) $4.5 million upon the achievement of annual net sales of XERAVA in the U.S. of at least $35.0 million during any calendar year ending on or before December 31, 2024; and/or (iii) $5.5 million upon the achievement of annual net sales of XERAVA in the U.S. of at least $55.0 million during any calendar year ending on or before December 31, 2024.

advisors' and Company insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Tetraphase stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.      In short, unless remedied, Tetraphase's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Tetraphase common stock trades on The Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Tetraphase.

9.     Defendant Tetraphase is a Delaware corporation, with its principal executive offices located at 480 Arsenal Way, Watertown, Massachusetts 02472.  The Company is a biopharmaceutical company using its proprietary chemistry technology to create novel tetracyclines for serious and life-threatening conditions, including infections caused by many of the multidrug-resistant bacteria highlighted as urgent public health threats by the World Health Organization and the Centers for Disease Control and Prevention.  Tetraphase's shares trade on The Nasdaq Global Select Market under the ticker symbol "TTPH."

10.    Defendant L. Patrick Gage ("Gage") has served as Chairman of the Board and a director of the Company since December 2011.

11.    Defendant Garen Bohlin ("Bohlin") has been a director of the Company since July 2010.

12.    Defendant Steven Boyd ("Boyd") has been a director of the Company since January 2020.  Defendant Boyd has served as the chief investment officer of Armistice Capital, LLC ("Armistice"), the Company's largest stockholder, since 2012.

13.    Defendant Jeffrey A. Chodakewitz ("Chodakewitz") has been a director of the Company since June 2014.

14.    Defendant John G. Freund ("Freund") has been a director of the Company since October 2012.

15.    Defendant Gerri Henwood ("Henwood") has been a director of the Company since April 2015.

16.     Defendant Guy Macdonald ("Macdonald") has been a director of the Company since January 2008.  Defendant Macdonald previously served as the Company's President and Chief Executive Officer ("CEO")  from January 2008 until August 2019.

17.     Defendant Keith Maher ("Maher") has been a director of the Company since January 2020.  Defendant Maher has served as a managing director at Armistice since 2019.

18.     Defendant Nancy J. Wysenski ("Wysenski") has been a director of the Company since March 2014.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     AcelRx is a is a Delaware corporation, with its principal executive offices located at 351 Galveston Drive, Redwood City, California 94063.  AcelRx is a  specialty pharmaceutical company focused on the development and commercialization of innovative therapies for use in medically supervised settings.  It operates both in the United States and abroad with a product portfolio that includes DSUVIA, DZUVEO, and Zalviso.  AcelRx's shares trade on The Nasdaq Global Select Market under the ticker symbol "ACRX."

21.     Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of AcelRx.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.     Tetraphase is a biopharmaceutical company that uses its proprietary chemistry technology to create novel tetracyclines for serious and life-threatening conditions, including infections caused by many of the multidrug-resistant bacteria highlighted as urgent public health

threats by the World Health Organization and the Centers for Disease Control and Prevention. The Company has created more than 3,000 novel tetracycline compounds using its proprietary technology platform. Tetraphase's lead product XERAVA is approved for the treatment of complicated intra-abdominal infections by the U.S. Food and Drug Administration and the European Medicines Agency. The Company's pipeline also includes antibiotics TP-271 and TP-6076, which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute myeloid leukemia

23.    On March 12, 2020, the Company reported its fourth quarter and full year 2019 financial results. Fourth quarter 2019 net loss totaled $11.4 million, or $2.75 per share, compared to a net loss of $21.5 million, or $8.00 per share, for the fourth quarter of 2018, driven by both increased product revenues and lower operating expenses. For the year ended December 31, 2019, Tetraphase reported a net loss of $70.1 million, or $22.85 per share, compared to a net loss of $72.2 million, or $27.48 per share, for the same period in 2018. The Company generated strong fourth quarter sales growth for its product XERAVA, for which carton sales grew over 45% compared with the third quarter of 2019. The Company's CEO Larry Edwards commented on the results, stating:

> We made significant progress throughout 2019, ending the year with $3.6 million in XERAVA net sales for the full year and a quarter-to-quarter net revenue increase in the fourth quarter of 2019 of 49.3%. Our sales consist solely of actual use and not stocking retail or other channels. We believe XERAVA is a critically important new addition to the hospital antibiotic armamentarium, and we remain committed to increasing formulary uptake and reaching all of our targeted accounts. The reorganization efforts we undertook in 2019 to create a streamlined organization singularly focused on the commercialization of XERAVA, including the elimination of our research and development function, are central to the success of our mission. With two recently completed equity offerings in November 2019 and January 2020 adding to our balance sheet, we are now in a stronger financial position to execute on our goals.

**The Proposed Transaction**

24.     On March 16, 2020, Tetraphase issued a press release announcing the Proposed

Transaction, which states, in relevant part:

WATERTOWN, Mass.-- Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase'ss outstanding common stock, have signed voting agreements in favor of the transaction.

Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.

"This transaction is an important move forward for Tetraphase and more importantly, for XERAVA and the patients who need this treatment," said Larry Edwards, President and Chief Executive Officer of Tetraphase. "We are excited to collaborate with AcelRx, a partner whose strategic goals complement our own. We continue to believe that XERAVA is a key addition to the hospital anti-infective armamentarium, and believe that together with AcelRx we will be able to more effectively bring new treatments to patients in healthcare institutions."

"We are excited to have reached agreement with Tetraphase, a company with a well-established U.S. salesforce and a high-growth hospital product that complements AcelRx's commercial strategy," said Vince Angotti, Chief Executive Officer of AcelRx. "This transaction highlights our focus on efficiently commercializing DSUVIA with a salesforce promoting multiple products and is the first step in our plan to create a growth platform to further consolidate hospital-focused pharmaceutical companies and products. We look forward to integrating XERAVA and the existing Tetraphase commercial infrastructure with our own as

we strengthen our position on promoting innovative products to healthcare institutions allowing patients access to new and improved treatments."

Based on the closing price of AcelRx stock on March 13, 2020, the stock consideration to be received by Tetraphase equityholders is valued at approximately $14.4 million, with approximately $7.4 million of this amount allocated to the Company's outstanding common stock warrants. In the merger, Tetraphase stockholders would also be entitled to receive, for each share of Tetraphase common stock, one non-tradeable CVR, the holders of which will be entitled to receive payments of up to an additional $12.5 million in the aggregate upon the achievement of net sales of XERAVA™ in the United States of at least (i) $20 million during 2021, (ii) $35 million during any year ending on or before December 31, 2024 and (iii) $55 million during any year ending on or before December 31, 2024. The total cost synergy expectation from the combined company exceeds 90% of the Tetraphase operating expenses and are expected to be fully realized in 2021.

Closing of the transaction is subject to specified closing conditions, including Tetraphase having a minimum amount of net cash as of the closing and approval by Tetraphase stockholders. Upon the closing of the transaction, Tetraphase will become a privately held company and shares of Tetraphase's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable.

## Insiders' Interests in the Proposed Transaction

25.     Tetraphase insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Tetraphase.

26.     Notably, the Proposed Transaction will deliver significant returns to certain Company insiders in connection with their Tetraphase stock warrants.  For example, defendants Maher and Boyd are both affiliated with Armistice, which, upon the closing of the Proposed Transaction, will receive consideration in exchange for its Tetraphase warrants as follows: (i) each outstanding warrant issued by Tetraphase in November 2019 will be converted into the right to receive  0.8813 of a share of AcelRx common stock for each share of Tetraphase common stock

underlying such warrant, (ii) each outstanding warrant issued by Tetraphase in January 2020 will be converted into the right to receive 0.9087 of a share of AcelRx common stock for each share of Tetraphase common stock underlying such warrant, and (iii) each outstanding pre-funded warrant will be converted into the right to receive the product of (a) in the case of pre-funded warrants issued by Tetraphase in November 2019, 98.89052%, and in the case of pre-funded warrants issued by Tetraphase in January 2020, 99.88906%, and (b) each element of the Merger Consideration, for each share of Tetraphase common stock underlying such warrant.

27.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash payments as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Bonus ($)(3) | Other ($)(4) | Total ($) |
|---|---|---|---|---|---|
| Larry Edwards | 750,000 | 13,835 | 45,975 | 275,000 | 1,084,810 |
| Maria Stahl | 415,000 | 8,777 | 29,714 | 166,000 | 619,491 |
| Christopher Watt | 312,296 | 1,980 | 30,650 | 93,689 | 438,615 |

## The Proxy Statement Contains Material Misstatements or Omissions

28.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Tetraphase's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company and AcelRx management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, Janney; (ii) the background of the Proposed Transaction; and (iii) Tetraphase's financial advisors' and Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Financial Projections and Janney's Financial Analyses*

30.     The Proxy Statement omits material information regarding Company and AcelRx management's financial projections for Tetraphase, AcelRx and the combined pro forma company.

31.     For example, with respect to each of the Tetraphase Base Projections, Tetraphase Upside Projections, AcelRx Base Projections and Combined Pro Forma Projections, the Proxy Statement fails to disclose all line items underlying unlevered free cash flow ("UFCF"), including: (i) depreciation; (ii) other non-cash adjustments; (iii) capital expenditures; and (iv) change in working capital.  The Proxy Statement further fails to disclose the potential impact of net operating losses, which was excluded from the respective UFCF calculations, as well as stock-based compensation expense which was not treated as a cash expense.

32.     The Proxy Statement also fails to disclose material information regarding Janney's financial analyses.

33.     The Proxy Statement describes Janney's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Janney's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Tetraphase's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Janney's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

34.     With respect to Janney's *Selected Precedent Transactions Analysis* and *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions and companies analyzed by Janney.

35.     With respect to Janney's *Standalone Discounted Cash Flow Analysis* of Tetraphase, the Proxy Statement fails to disclose: (i) the financial metric that exit multiples of

2.25x to 2.75x were applied to in order to derive the terminal values and quantification of the metric; (ii) quantification of the terminal values of Tetraphase; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 17.6% to 21.6%; and (iv) the net debt or net cash utilized in the analysis.

36.     With respect to Janney's *Analysis of Implied Pro Forma Equity Value Impact to Tetraphase*, the Proxy Statement fails to disclose: (i) the financial metric that exit multiples of 2.25x to 2.75x were applied to in order to derive the terminal values and quantification of the metric; (ii) quantification of the terminal values of the combined pro forma company; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 14.7% to 18.7%; and (iv) the net debt or net cash of the combined pro forma entity utilized in the analysis.

37.     With respect to Janney's *Premiums Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Janney; and (ii) the premiums paid in each of those transactions.

38.     Without such undisclosed information, Tetraphase stockholders cannot evaluate for themselves whether the financial analyses performed by Janney were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Janney's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

39.     The omission of this material information renders the statements in the "Certain Information Provided by the Parties" and "Opinion of Janney Montgomery Scott LLC,

Tetraphase's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning the Background of the Proposed Transaction***

40.     The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

41.     For example, the Proxy Statement sets forth that:

On or about August 2, 2019, . . .  following the execution of a confidentiality agreement with the applicable party, Tetraphase provided access to a data room to representatives of Company B, Company C, Company F, Company G and Company I as well as companies that are referred to as Company K and Company L.

Proxy Statement at 50.  The Proxy Statement further states that, "[o]n December 30, 2019, Company P executed a confidentiality agreement with Tetraphase and representatives of Company P and Armistice Capital . . . ."  *Id.* at 54.  In addition, the Company entered into a confidentiality agreement with a potential investor on October 2, 2019 and with several third-party lenders between October and December 2019.  *Id.* at 51, 53.  The Proxy Statement, however, fails to disclose whether the confidentiality agreements include a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding potential acquirers from submitting a topping bid for the Company.

42.     The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for the Company.  If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask

for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

43.     Any reasonable Tetraphase stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

44.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Tetraphase's Financial Advisors' and Company Insiders' Potential Conflicts of Interest***

45.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Janney.

46.     The Proxy Statement sets forth that:

> Pursuant to the terms of the engagement letters between Janney and the Tetraphase Board and between Janney and the management of Tetraphase, Tetraphase agreed to pay to Janney a retainer fee upon signing of the fairness opinion engagement letter, a fee upon Janney's delivery of its Opinion, and a fee upon the consummation of the Merger in consideration of financial advisory services rendered in connection with the Merger, for an aggregate amount of fees of approximately $600,000. Approximately half of the amount of the total fees are contingent upon the successful completion of the Merger. The fee for rendering the Opinion is not contingent on the successful completion of the Merger or the conclusions expressed therein.

*Id*. at 75-76. The Proxy Statement fails, however, to disclose and quantify the portion of Janney's fee payable upon each of: (i) signing of the fairness opinion engagement letter; (ii) delivery of Janney's fairness opinion; and (iii) consummation of the Proposed Transaction.   The Proxy Statement further fails to quantify the amount of Janney's fee that is contingent upon consummation of the Proposed Transaction.   The Proxy Statement further fails to disclose the details of any services provided to the Company's largest stockholder, Armistice, in the two years

prior to the date of its fairness opinion, and any fees received for services provided.

47.     Moreover, the Proxy Statement fails to disclose the details of the Company's engagement of the other financial advisors retained in connection with the sales process, referred to in the Proxy Statement as "Financial Advisor A," "Financial Advisor B," and "Financial Advisor C," including (i) the identities thereof; (iii) the details of the fees paid; and (iii) the details of any services provided by the respective financial advisors to the Company, AcelRx or Armistice in the prior two years, and any fees received for services provided.

48.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49.     The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

50.     For example, according to the Proxy Statement, "AcelRx and Tetraphase have commenced an integration planning process to determine the employment status of Tetraphase's executive officers following the Effective Time. Additional decisions regarding these individuals are expected to be made closer to, or after, the closing of the Merger." *Id.* at 84.   The Proxy Statement, however, fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between AcelRx and Tetraphase executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of AcelRx's proposals or indications of interest mentioned management retention.

51.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.

This information is necessary for Tetraphase's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

52.     The omission of this material information renders the statements in the "Opinion of Janney Montgomery Scott LLC, Tetraphase's Financial Advisor," "Background of the Merger," and "Equity Awards Held by Tetraphase Directors and Executive Officers" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

53.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Tetraphase will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

56.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about (i) Company and AcelRx management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Board's financial advisor, Janney; (ii) the background of the Proposed Transaction; and (iii) Tetraphase's financial advisors' and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

57.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek to exercise their appraisal rights.

58.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

59.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

60.     Plaintiff repeats all previous allegations as if set forth in full.

61.     The Individual Defendants acted as controlling persons of Tetraphase within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Tetraphase, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

62.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

64.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

65.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their

positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Tetraphase stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Tetraphase, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Tetraphase stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  April 29, 2020                        **WEISSLAW LLP**


By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*